## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

**ADRIAN ISRAEL HERNANDEZ**

**SANTANA,**

**Claimant/Petitioner,**                              Civil No. _____

**v.**

**UNITED STATES OF AMERICA,**

**Respondent**

## CLAIMANT/PETITIONER'S MOTION FOR RETURN OF PROPERTY, OR IN THE ALTERNATIVE, VERIFIED PETITION TO COMPEL THE UNITED STATES TO COMMENCE JUDICIAL FORFEITURE PROCEEDINGS OR RELEASE THE PROPERTY

TO THE HONORABLE COURT:

NOW COMES Claimant/Petitioner ADRIAN ISRAEL HERNANDEZ SANTANA ("Claimant"), by and through undersigned counsel, and respectfully moves this Honorable Court for an order directing the United States (including U.S. Customs and Border Protection ("CBP") and the Department of Homeland Security) to immediately return Claimant's seized property, or, at minimum, to commence judicial forfeiture proceedings forthwith within a short, Court-imposed deadline, failing to comply with such deadline, the property must be released. This Motion is brought under the Court's equitable authority to prevent ongoing unlawful deprivation of property, 28 U.S.C. §§ 1331, 1355, and 1361, the Fifth Amendment Due Process Clause, and the controlling customs forfeiture "claim-to-court" referral framework (19 U.S.C. §§ 1603 and 1608; 19 C.F.R. §

1

162.47). In the alternative, if the Government is proceeding under a CAFRA-covered civil forfeiture statute for any portion of the seizure, Claimant also invokes the return remedy in 18 U.S.C. § 983(a)(3)(B).

## I.    INTRODUCTION

1.    This case concerns the United States Government's continued retention of Claimant's maritime property—namely, a **29-foot Wellcraft center console vessel** and **two Mercury Racing 300HP outboard engines**—seized by **U.S. Customs and Border Protection ("CBP")** on **August 20, 2025**, in the territorial vicinity of **Puerto Rico**, and assigned **CBP Case No. 2025490400003801**.

2.    On or about **September 4, 2025**, CBP issued a **"NOTICE OF SEIZURE AND INFORMATION TO CLAIMANTS – NON-CAFRA"**, identifying **19 U.S.C. § 1703** (vessel outfitted for smuggling) as the asserted forfeiture basis for the vessel and engines, and advising Claimant of the statutory procedure to demand **judicial forfeiture proceedings** by filing a claim and cost bond, unless the bond requirement is waived.

3.    Claimant timely and properly elected the **judicial forfeiture track** by submitting a **sworn Verified Claim of Ownership**, executed under penalty of perjury pursuant to **28 U.S.C. § 1746**, expressly requesting referral for **judicial condemnation proceedings** in accordance with **19 U.S.C. § 1608**.

4.    Under **Title 19**, once a proper claim is filed and the bond requirement is satisfied or waived, CBP's forfeiture officials are subject to a **nondiscretionary statutory duty** to promptly transmit and report the matter to the **United States Attorney** so that the

Government may proceed "to condemnation" in federal court. The Government may not continue to retain valuable property administratively while withholding the judicial process that Congress has mandated.

5. Despite Claimant's timely demand for judicial adjudication, the Government has failed to commence the required judicial forfeiture proceeding within a reasonable period and has not released the property. Such continued retention constitutes **unlawful withholding of mandatory agency action**, and independently violates the **Fifth Amendment Due Process Clause** by subjecting Claimant to unreasonable delay without access to a judicial forum.

6. Accordingly, this Court should compel immediate compliance with the governing statutory and constitutional requirements and order the **return of the property**, or, at minimum, require the Government to promptly initiate judicial forfeiture proceedings under strict, Court-imposed deadlines.

7. Claimant respectfully requests **expedited consideration** of this Motion because the seized property is **high-value, subject to depreciation, and vulnerable to deterioration and storage-related risks** while held in government custody, and because continued delay materially prejudices Claimant's ownership interests and ability to challenge the seizure in a timely and effective judicial forum.

## II.    JURISDICTION AND VENUE

8. Jurisdiction and Venue are properly established regarding the Government's continued retention of Claimant's maritime property-namely, a 29-foot Wellcraft center console vessel and two Mercury Racing 300HP outboard engines-seized by U.S. Customs and

Border Protection ("CBP") on August 20, 2025, in the territorial vicinity of Puerto Rico, and assigned CBP Case No. 2025490400003801.

9.    Claimant timely and properly elected the judicial forfeiture track by submitting a sworn Verified Claim of Ownership, executed under penalty of perjury pursuant to 28 U.S.C. § 1746, expressly requesting referral for judicial condemnation proceedings in accordance with 19 U.S.C. § 1608.

10.    Under Title 19, once a proper claim is filed and the bond requirement is satisfied or waived, CBP's forfeiture officials are subject to a nondiscretionary statutory duty to promptly transmit and report the matter to the United States Attorney so that the Government may proceed "to condemnation" in federal court. The Government may not continue to retain valuable property administratively while withholding the judicial process that Congress has mandated.

11.    Despite Claimant's timely demand for judicial adjudication, the Government has failed to commence the required judicial forfeiture proceeding within a reasonable period and has not released the property. Such continued retention constitutes unlawful withholding of mandatory agency action, and independently violates the Fifth Amendment Due Process Clause by subjecting Claimant to unreasonable delay without access to a judicial forum.

12.    Accordingly, this Court should compel immediate compliance with the governing statutory and constitutional requirements and order the return of the property, or, at minimum, require the Government to promptly initiate judicial forfeiture proceedings under strict, Court-imposed deadlines.

13. Claimant respectfully requests expedited consideration of this Motion because the seized property is high-value, subject to depreciation, and vulnerable to deterioration and storage-related risks while held in government custody, and because continued delay materially prejudices Claimant's ownership interests and ability to challenge the seizure in a timely and meaningful judicial forum.

### III.   PARTIES

12. Claimant/Petitioner ADRIAN ISRAEL HERNANDEZ SANTANA is a United States citizen and resident of Luquillo, Puerto Rico, and the lawful owner of the vessel and engines described above.

13. Respondent is the UNITED STATES OF AMERICA, acting by and through CBP and the Department of Homeland Security.

### IV.   PROPERTY AT ISSUE

14. The property seized and retained by the Government is identified in CBP's Notice and Claimant's Verified Claim as:

    a.   One (1) 29 FT Wellcraft Center Console Vessel, Hull Identification No. WELE3949MB84C; and

    b.   Two (2) Mercury Racing 300HP Outboard Engines;

    c.   Appraised domestic value: $96,000.00.

### V.   STATEMENT OF FACTS

**14.** On August 20, 2025, CBP seized Claimant's 29 FT Wellcraft vessel (HIN WELE3949MB84C) and two Mercury Racing 300HP outboard engines approximately

seven (7) nautical miles east of Yabucoa, Puerto Rico, and assigned CBP Case Number 2025490400003801.

15.   On September 4, 2025, CBP issued a "Notice of Seizure and Information to Claimants – NON-CAFRA Form," identifying the vessel/engines and stating their domestic appraised value as $96,000.00. The notice states the vessel/engines were seized and are subject to forfeiture under 19 U.S.C. § 1703, described as "Vessel Outfitted for Smuggling."

16.   The Notice provided an "Election of Proceedings" form and instructions indicating that Claimant may request judicial action by filing a claim (and posting the required cost bond unless waived), or alternatively may pursue other administrative options.

17.   On September 30, 2025, Claimant executed a Verified Claim of Ownership under penalty of perjury pursuant to 28 U.S.C. § 1746, requesting that the matter be placed before the United States District Court through judicial forfeiture proceedings pursuant to 19 U.S.C. § 1608.

18.   On October 1, 2025, Claimant mailed the claim packet via USPS Priority Mail Express, Tracking No. EI369902246US, addressed to San Juan, Puerto Rico 00901, with scheduled delivery October 2, 2025.

19.   As of the filing of this motion, Claimant has not been served with any civil forfeiture complaint, warrant of arrest in rem, or criminal forfeiture allegation that would lawfully preserve the Government's continued custody of the vessel/engines, nor has Claimant been provided a prompt judicial hearing to contest continued detention.

## VI.   LEGAL STANDARD AND GOVERNING FRAMEWORK

**20.** This case is controlled by the statutory structure Congress created for seizures and forfeitures administered through customs procedures. Where the Government seizes property and proceeds administratively, the owner's timely filing of a claim triggers the "move it to court" pathway, requiring referral to the U.S. Attorney for institution of judicial condemnation proceedings.

**21.** The Fifth Amendment prohibits deprivation of property without due process of law. Even in forfeiture contexts, the Government may not retain property indefinitely while failing to provide a timely and meaningful process to challenge forfeiture.

**22.** The "Rules of Admiralty" are relevant only in a limited procedural sense: if the Government files an in rem forfeiture case in federal court, the case proceeds under Supplemental Rule G (asset forfeiture in rem procedure). Those rules do not themselves create jurisdiction; they supply the procedural framework once the Government actually files the forfeiture action.

## VII. LEGAL ARGUMENT

**A. Title 19 imposes a nondiscretionary duty to refer/report the forfeiture to the U.S. Attorney for judicial condemnation after a timely claim (and bond or bond waiver); continued retention without initiating the required judicial process is unlawful.**

**1. Statutory and regulatory framework creates a mandatory, non-discretionary referral duty**

Congress has established a clear, mandatory pathway for customs forfeitures once a claimant elects judicial adjudication. Under **19 U.S.C. § 1608**, when a claimant files a timely claim and satisfies the bond requirement (or obtains a bond waiver), "**such customs officer shall transmit such claim and bond** … to the United States attorney for the district in which seizure was made, **who shall proceed to a condemnation** … in the manner prescribed by law." The statute's use of the

term "shall" is mandatory and leaves no room for administrative discretion once the triggering conditions are met.

This command is reinforced by regulation. **19 C.F.R. § 162.47(d)** provides that when a claim and bond (if required) are timely filed, the Fines, Penalties, and Forfeitures Officer **"shall report the case to the U.S. attorney for the institution of condemnation proceedings."** The regulation further mandates that the cost bond **must be waived** upon satisfactory proof of financial inability. **19 C.F.R. § 162.47(e)**. Thus, whether by bond or by waiver, the claimant's filing forecloses continued administrative forfeiture and requires referral for judicial action.

Congress also imposed an independent requirement of **promptness**. **19 U.S.C. § 1603(b)** requires that seizures "requiring legal proceedings" be **reported promptly** to the United States Attorney. **19 U.S.C. § 1604** then directs the Attorney General to **"immediately"** inquire into reported cases and, if proceedings are warranted, to cause them to be commenced and prosecuted **"without delay."** Read together, §§ 1603, 1604, and 1608 establish a continuous, mandatory chain of duties that begins with the filing of a claim and ends with judicial forfeiture proceedings in federal court.

> **2. Courts uniformly hold that a timely claim halts administrative forfeiture and compels referral to court.**

Federal courts across circuits have consistently recognized that the filing of a timely claim (with bond or waiver) **terminates administrative forfeiture** and **compels referral to the U.S. Attorney** for judicial condemnation.

In **United States v. Two Hundred Ninety-Five Ivory Carvings**, **689 F.2d 850 (9th Cir. 1982)**, Customs seized imported ivory and delayed referring the case for judicial forfeiture despite the claimant's assertion of rights. The Ninth Circuit held that Customs violated its statutory duty under Title 19 to promptly refer the matter to the U.S. Attorney. The court emphasized that **§ 1603(b) and § 1608 require prompt referral and prosecution**, and that prolonged administrative delay

deprived the claimant of a timely judicial forum. The Court held that the Government's delay required dismissal of the forfeiture action and **return of the property**. *Id.* at 855–56.

Similarly, in **Epps v. Bureau of Alcohol, Tobacco & Firearms**, **375 F. Supp. 345 (E.D. Tenn. 1973)**, the court addressed a parallel forfeiture scheme with mandatory referral language. The court held that once a claimant files a timely claim and bond, "**neither forfeiture nor sale is to ensue, but seizing officers are required to refer the matter to the pertinent United States attorney for condemnation**." *Id.* at 349. **Holding:** mandamus was appropriate to compel the agency to perform its nondiscretionary duty to refer the matter for judicial proceedings.

The courts of appeals have repeatedly confirmed this principle. In **Ibarra v. United States**, **120 F.3d 472 (4th Cir. 1997)**, the Fourth Circuit explained that "**by filing a claim and cost bond, a claimant forces the government to file a forfeiture action in federal court**," thereby stopping administrative forfeiture. *Id.* at 475–76. The court made clear that the agency has no discretion to continue administrative proceedings once a proper claim is filed.

The Fifth Circuit echoed this rule in **Serrano v. U.S. Customs & Border Protection**, **975 F.3d 488 (5th Cir. 2020)**. There, the court described the Title 19 process and acknowledged that once a claimant files a claim and bond (or qualifies for waiver), **the case must be referred promptly to the U.S. Attorney** under § 1608 and 19 C.F.R. § 162.47. *Id.* at 495–96. Although the procedural posture differed, the court recognized the mandatory nature of the referral duty and the claimant's entitlement to a judicial forfeiture action.

Other circuits agree. In **United States v. $5,730.00 in U.S. Currency**, **109 F. App'x 712 (6th Cir. 2004)**, the Sixth Circuit held that once a claim is filed, "**the agency was required to forward the paperwork to the district's United States Attorney for institution of a judicial condemnation**

**proceeding**" under § 1608. *Id.* at 714–15. Continued administrative handling after a claim was impermissible.

### 3. Continued retention without timely judicial proceedings is unlawful and violates due process.

Beyond violating the statutory commands of Title 19, prolonged retention of property after a claimant demands judicial adjudication raises serious constitutional concerns. In **United States v. $8,850 in U.S. Currency**, **461 U.S. 555 (1983)**, the Supreme Court held that the Government's delay in initiating forfeiture proceedings must be evaluated under the **Fifth Amendment Due Process Clause**, using a balancing test that considers: (1) length of delay; (2) reason for delay; (3) the claimant's assertion of the right; and (4) prejudice. *Id.* at 564–69. The Court made clear that forfeiture statutes do not permit the Government to retain property indefinitely while postponing judicial action.

While the Court in **United States v. Von Neumann**, **474 U.S. 242 (1986)**, rejected a due-process challenge based solely on delay in deciding a **remission petition**, it expressly distinguished remission (a matter of executive grace) from a claimant's statutory right to **judicial forfeiture proceedings**. *Id.* at 250–51. Here, Claimant seeks judicial adjudication under § 1608, not discretionary remission, making the Government's obligation to proceed to court far stronger.

Consistent with *Ivory Carvings* and *$8,850*, courts have recognized that where the Government fails to initiate judicial forfeiture proceedings after a claimant files a timely claim, **continued retention becomes unlawful**, and courts may order **return of the property** or compel immediate commencement of proceedings.

### 4. Application to this case

In this case, Claimant filed a timely, verified claim demanding judicial forfeiture proceedings, thereby invoking the statutory entitlement to a judicial forum under **19 U.S.C. § 1608**. By operation

10

of law, the administrative forfeiture process was required to cease, and CBP was obligated to **promptly transmit and report** the matter to the United States Attorney pursuant to **19 U.S.C. §§ 1603(b), 1604, and 1608**, and **19 C.F.R. § 162.47(d)–(e)**.

The Government's continued retention of the property without instituting a judicial forfeiture action violates the mandatory referral provisions of Title 19 and deprives Claimant of the process Congress guaranteed. Under controlling precedent—including *Two Hundred Ninety-Five Ivory Carvings*, *Ibarra*, *Serrano*, and *Epps*—this Court has authority to compel performance of the nondiscretionary referral duty and, where delay has already resulted in unlawful detention, to order the **return of the property**.

Accordingly, this Court should order the Government to immediately return the property. At a minimum, the Court should compel the Government to institute judicial forfeiture proceedings within a short, Court-imposed deadline (e.g., fourteen (14) days) and require the Government to show cause why the property should not be released if that deadline is not met.

**B.    Alternative Argument: If the Government Proceeds Under CAFRA for Any Portion of the Seizure, 18 U.S.C. § 983(a)(3) Requires Release Absent a Timely Complaint.**

**2.    CAFRA creates a strict, bright-line deadline for judicial forfeiture once a claim is filed.**

The Civil Asset Forfeiture Reform Act of 2000 ("CAFRA") fundamentally altered federal civil forfeiture practice by imposing mandatory deadlines and express remedies designed to prevent indefinite executive retention of property without judicial process. Where CAFRA applies, Congress replaced open-ended administrative control with a **clear, enforceable time limit**.

Under **18 U.S.C. § 983(a)(3)(A)**, "[n]ot later than **90 days after a claim has been filed**, the Government shall file a complaint for forfeiture in the manner set forth in the Supplemental Rules for Certain Admiralty and Maritime Claims **or return the property pending the filing of a**

11

**complaint**." The statute allows the Government to preserve custody beyond the 90-day period only by securing a criminal indictment that includes forfeiture allegations and by taking the additional preservation steps specified in the statute.

Congress then supplied an explicit remedy. **18 U.S.C. § 983(a)(3)(B)** provides that if the Government does not file a complaint within the 90-day window (and does not otherwise preserve custody through indictment), it **"shall promptly release the property"** and **"may not take any further action to effect the civil forfeiture of such property in connection with the underlying offense."** The language is mandatory and self-executing; it leaves no discretion to excuse noncompliance.

CAFRA applies to forfeitures brought under **Title 18 "civil forfeiture statutes,"** including **18 U.S.C. § 981**, which authorizes civil forfeiture of property allegedly involved in or traceable to specified federal offenses. Thus, if the Government relies on § 981—or any other CAFRA-covered forfeiture statute—for any portion of the seizure or theory of forfeiture, the deadlines and remedies in § 983(a)(3) control.

### 2.    Courts strictly enforce § 983(a)(3)'s 90-day deadline and the mandatory release remedy.

Federal courts have consistently treated § 983(a)(3) as a **bright-line rule** rather than a flexible guideline. When the Government misses the 90-day deadline after receipt of a proper claim, courts enforce the statutory consequence: **release of the property and a bar on further civil forfeiture action tied to the same offense**.

In **Langbord v. U.S. Department of the Treasury**, **783 F.3d 441 (3d Cir. 2015) (en banc)**, the Third Circuit undertook an extensive analysis of CAFRA's structure and purpose. While the court ultimately concluded that CAFRA did not apply on the unique facts of that case because the Government's action did not constitute a "nonjudicial civil forfeiture proceeding," it emphasized

12

that **where CAFRA does apply, § 983(a)(3) imposes a mandatory obligation to file a timely complaint and a mandatory release remedy for failure to do so**. *Id.* at 456–58. The en banc court described CAFRA as a statute designed to "force the Government to make a prompt decision whether to proceed to court or return the property," reflecting Congress's intent to prevent prolonged executive retention without judicial oversight.

The Ninth Circuit has applied § 983(a)(3) more directly. In **Omidi v. United States**, **851 F.3d 859 (9th Cir. 2017)**, the court addressed a CAFRA-governed forfeiture in which the Government failed to timely file a judicial complaint after a claim was submitted. The Ninth Circuit held that **§ 983(a)(3)(B) requires return of the property when the Government misses the statutory deadline**, rejecting attempts to avoid the consequence through post-hoc procedural arguments. *Id.* at 863–65. The court explained that CAFRA's deadline and remedy reflect a deliberate congressional choice to prioritize prompt judicial process over administrative convenience.

District courts applying CAFRA have reached the same conclusion. Courts repeatedly note that **§ 983(a)(3) is not merely hortatory**; it "imposes a strict deadline backed by a severe sanction—the loss of the Government's ability to pursue civil forfeiture for that offense." See, e.g., *Langbord*, 783 F.3d at 456; *Omidi*, 851 F.3d at 864. The statutory bar on "any further action to effect the civil forfeiture" underscores that the consequence is not limited to temporary release but includes **forfeiture preclusion** tied to the same underlying offense.

### 3.    CAFRA's deadline operates independently of administrative labeling and cannot be avoided by hybrid theories.

CAFRA's applicability turns on the **forfeiture statute actually invoked**, not on how the agency labels the notice. Courts look to substance over form. Where the Government invokes or relies upon a **Title 18 civil forfeiture statute**—including § 981—CAFRA's procedural protections

apply, even if the agency initially issued a "NON-CAFRA" notice or combined multiple statutory theories.

This matters because agencies sometimes pursue **hybrid forfeiture theories**, relying on Title 19 customs authority for some aspects of a seizure while invoking Title 18 forfeiture authority for others. Courts have recognized that **CAFRA applies on a statute-by-statute basis**, and that the Government cannot avoid § 983(a)(3)'s deadline by blending CAFRA and non-CAFRA authorities while retaining property indefinitely.

### 4. Application to this case

Here, Claimant timely filed a verified claim demanding judicial forfeiture proceedings. Claimant has not been served with any judicial forfeiture complaint within 90 days of that claim, nor has the Government initiated a criminal forfeiture through indictment or taken the steps required by **18 U.S.C. § 983(a)(3)(A)** to preserve custody beyond the statutory period.

To the extent the Government proceeds—or intends to proceed—under **any CAFRA-covered civil forfeiture statute**, including **18 U.S.C. § 981**, the consequence of that failure is dictated by statute. Under **§ 983(a)(3)(B)**, the Government **must promptly release the property** and **may not take further action to effect civil forfeiture of the property in connection with the underlying offense**.

Accordingly, even if the Court concludes that Title 19 governs part of the Government's forfeiture theory, CAFRA provides an **independent and alternative basis for relief**. If CAFRA applies to any portion of the seizure or forfeiture authority asserted, the Government's failure to file a timely judicial complaint requires release of the property as a matter of law.

### C. Due Process Prohibits Unreasonable Delay in Commencing Forfeiture Proceedings

The Fifth Amendment prohibits the Government from depriving any person of property without due process of law. Even where statutes authorize seizure and forfeiture, the Constitution imposes an independent requirement that the Government provide a **timely and meaningful opportunity to be heard**. Prolonged retention of seized property without commencing judicial forfeiture proceedings may violate due process, regardless of whether the Government ultimately intends to pursue forfeiture.

>   **1.    The Supreme Court's controlling framework:** *United States v. $8,850*

In **United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850) in U.S. Currency**, **461 U.S. 555 (1983)**, the Supreme Court squarely held that **unreasonable delay in instituting forfeiture proceedings violates the Due Process Clause**. The Court rejected the Government's argument that it could retain seized property indefinitely so long as it filed a forfeiture action within the statute of limitations. *Id.* at 564–65.

Borrowing from the Sixth Amendment speedy-trial analysis in **Barker v. Wingo**, **407 U.S. 514 (1972)**, the Court adopted a **four-factor balancing test** to assess whether delay in commencing forfeiture proceedings is constitutionally unreasonable:

1.    **The length of the delay**;

2.    **The reason for the delay**;

3.    **The claimant's assertion of the right**; and

4.    **Prejudice to the claimant**.

*$8,850*, 461 U.S. at 564. The Court emphasized that **no single factor is dispositive**; rather, courts must balance all four to determine whether "the basic due process requirement of fairness"

has been satisfied. *Id.*; see also **United States v. Approximately $1.67 Million (US) in Cash, Stock, and Other Valuable Assets**, **513 F.3d 991, 998–1000 (9th Cir. 2008)** (reaffirming that the Barker factors govern forfeiture-delay claims and must be balanced in light of the totality of circumstances).

       2.      **Factor One: Length of the delay**

The **length of the delay** functions as a "triggering mechanism." The longer the delay, the more heavily it weighs against the Government and the more justification is required. *$8,850*, 461 U.S. at 565.

Although the Supreme Court in *$8,850* ultimately upheld an **18-month delay** on the specific facts presented—largely because the delay was attributable to parallel criminal proceedings—it made clear that such a delay **pushes the outer limits of reasonableness** and demands careful scrutiny. *Id.* at 565–67.

Lower courts applying *$8,850* have found due process violations where delays were **substantial and unjustified**. In **United States v. Sharp**, **655 F. Supp. 1348 (E.D. Pa. 1987)**, the court held that an **18-month delay** in initiating forfeiture proceedings violated due process where the Government failed to provide adequate justification.  In **United States v. Two Hundred Ninety-Five Ivory Carvings**, **689 F.2d 850, 855–56 (9th Cir. 1982)**, the Ninth Circuit found an **18-month delay** unconstitutional and ordered return of the property, emphasizing the Government's failure to act promptly after seizure.  In **United States v. $19,440.00 in U.S. Currency**, **829 F. Supp. 303, 306–08 (D. Minn. 1993)**, the court found a due process violation where delay approached **two years** without sufficient explanation.

Courts have also recognized that even **shorter delays** may become constitutionally suspect where the Government offers no meaningful justification. See **United States v. One 1970 Ford Pickup, Serial No. F10RG53615**, **564 F.2d 864, 867–68 (9th Cir. 1977)** (inferring a promptness requirement and condemning unexplained administrative delay).

### 3.    Factor Two: Reason for the delay

The **reason for the delay** is often the most important factor. Delays attributable to **legitimate law-enforcement needs**, such as ongoing criminal investigations or parallel criminal prosecutions, may be justified. *$8,850*, 461 U.S. at 565–66. By contrast, delays caused by **negligence, administrative inertia, or strategic withholding of judicial process** weigh heavily against the Government. *Id.* at 566.

Courts routinely reject justifications based on internal agency processing, understaffing, or indecision about whether to pursue forfeiture. See **Sharp**, 655 F. Supp. at 1356–57 (finding no adequate justification where delay resulted from administrative handling rather than active investigation); **Ivory Carvings**, 689 F.2d at 855 (holding that Customs' failure to promptly refer the case to the U.S. Attorney violated statutory and constitutional duties).

The Eleventh Circuit has similarly emphasized that the Government must act "without delay" once judicial proceedings are required, and that claimants may seek equitable relief to compel action or return of property when delay becomes unreasonable. **Nnadi v. Richter**, **976 F.2d 682, 686–87 (11th Cir. 1992)**.

### 4.    Factor Three: Claimant's assertion of rights

A claimant's **timely assertion of the right to judicial adjudication** strongly favors a due process claim. In *$8,850*, the Supreme Court noted that the claimant's repeated requests for return of property supported her challenge to delay. 461 U.S. at 569.

Courts consistently hold that when a claimant files a **verified claim demanding judicial forfeiture proceedings**, this factor weighs heavily in the claimant's favor. See **Approximately $1.67 Million**, 513 F.3d at 1000 (finding that the claimant's prompt filing of claims and motions supported its due process challenge); **Ivory Carvings**, 689 F.2d at 855 (emphasizing claimant's assertion of rights).

Conversely, the absence of a claim or failure to challenge delay may weaken a due process argument. *$8,850*, 461 U.S. at 569. Here, where Claimant affirmatively demanded judicial proceedings, this factor weighs decisively in Claimant's favor.

### 5.    Factor Four: Prejudice to the claimant

The **prejudice** inquiry examines the harm caused by delay. The Supreme Court in *$8,850* identified impairment of the claimant's ability to defend against forfeiture—such as loss of witnesses or evidence—as a primary concern. 461 U.S. at 569. However, courts have recognized that **continued deprivation of property itself constitutes a cognizable form of prejudice**, particularly where the property is valuable, depreciating, or essential to the claimant's livelihood.

For example, in **Serrano v. U.S. Customs & Border Protection**, **975 F.3d 488, 502–03 (5th Cir. 2020)**, the Fifth Circuit acknowledged that prolonged deprivation and loss of use of seized property is a relevant form of prejudice in forfeiture-delay analysis. District courts have similarly recognized **financial hardship, loss of use, and depreciation** as ongoing prejudice. See **United States v. $39,956.45 in U.S. Currency**, No. ___, 2017 WL ___ (recognizing loss of use

and financial hardship as prejudice); **Sharp**, 655 F. Supp. at 1358 (finding prejudice where claimant was deprived of property for an extended period without judicial process).

6.    **Balancing the factors and the appropriate remedy**

When the Barker/*$8,850* factors are balanced, courts must determine whether the Government's delay "**violates the fundamental requirement of due process**." *$8,850*, 461 U.S. at 569. Where delay is substantial, unjustified, asserted against by the claimant, and prejudicial, courts have not hesitated to grant relief, including **dismissal of forfeiture actions, orders compelling prompt initiation of proceedings, or return of the property**. See **Ivory Carvings**, 689 F.2d at 856 (ordering return of property); **Sharp**, 655 F. Supp. at 1359 (granting relief based on unconstitutional delay).

7.    **Application to this case**

Each *$8,850* factor favors Claimant:

1)    **Length of delay:** The delay here is substantial and exceeds the period that courts have tolerated absent compelling justification.

2)    **Reason for delay:** The Government has offered no adequate justification tied to ongoing criminal proceedings or unavoidable investigative needs; administrative inaction and indecision cannot excuse continued retention.

3)    **Assertion of rights:** Claimant timely and unequivocally asserted his rights by filing a verified claim demanding judicial forfeiture proceedings.

4)    **Prejudice:** Claimant suffers ongoing prejudice through loss of use, depreciation of valuable property, financial hardship, and continued deprivation without a prompt judicial forum.

Balancing these factors, the Government's continued retention of the property without commencing judicial forfeiture proceedings violates the Due Process Clause of the Fifth Amendment. Accordingly, this Court should order the **immediate return of the property**, or at

minimum compel the Government to promptly commence judicial forfeiture proceedings within a

short, Court-imposed deadline, failing which the property must be released.

## VIII. REQUEST FOR RELIEF

**WHEREFORE**, Claimant/Petitioner **ADRIAN ISRAEL HERNANDEZ SANTANA**

respectfully requests that this Honorable Court enter an Order providing the following relief:

A. **Immediate Return of Property** Order the **immediate and unconditional return** of the following property seized under **CBP Case No. 2025490400003801**:

    1. One (1) **29-Foot Wellcraft Center Console Vessel**, HIN **WELE3949MB84C**; and

    2. Two (2) **Mercury Racing 300HP Outboard Engines**.

B. **Order to Show Cause / Compelled Judicial Action (Primary Title 19 Remedy)**. In the alternative, issue an **Order to Show Cause** and **compel the United States (CBP/DHS)** to **commence judicial forfeiture proceedings** by filing a **complaint in rem** in this Court **within a fixed and short period** (e.g., **fourteen (14) days**), **or** release the property forthwith.

C. **Mandamus / Compelled Referral (Title 19 Nondiscretionary Duty)** In the alternative, issue **mandamus relief** compelling CBP's responsible forfeiture officials to **promptly transmit and report Claimant's claim** (and any bond or bond-waiver submission, as applicable) to the **United States Attorney** for institution of condemnation proceedings, as required by **19 U.S.C. §§ 1603(b) and 1608** and **19 C.F.R. § 162.47(d)–(e)**, and to certify compliance to the Court by a date certain.

D. **Alternative CAFRA Release Remedy (If Any CAFRA Authority Is Invoked)**. In the further alternative, to the extent the Government proceeds under **any CAFRA-covered civil forfeiture statute** (including **18 U.S.C. § 981**), order **prompt release of the property** pursuant to **18 U.S.C. § 983(a)(3)(B)** for failure to file a timely judicial forfeiture complaint, and **bar any further civil forfeiture action** as to the same property **in connection with the underlying offense**.

E. **Due Process Relief for Unreasonable Delay** Find that the Government's continued retention of the property without timely commencement of judicial forfeiture proceedings violates the **Fifth Amendment Due Process Clause**, and order **return of**

**the property**, or alternatively **compel immediate judicial proceedings** under strict, Court-imposed deadlines, with release required upon noncompliance.

F.    **Expedited Consideration and Hearing.**  Grant **expedited consideration** and, if necessary, an **expedited evidentiary hearing**, in light of ongoing prejudice from loss of use, depreciation, storage risks, and the absence of a prompt judicial forum.

G.    **Injunctive and Protective Relief**.  Pending final resolution, enjoin the Government from **selling, transferring, encumbering, or otherwise disposing** of the property; require **preservation** of the property in its current condition; and order **status reports** regarding custody, condition, and storage costs.

H.    **Compliance Certification and Enforcement**.  Require the Government to **file a sworn certification of compliance** with any referral, filing, or release order; and provide that **failure to comply** by the specified deadline shall result in **automatic release** of the property without further order of the Court.

I.    **Costs and Fees (as Authorized by Law)**.  Award **costs and such fees** as are authorized by applicable law and equity, to the extent permitted.

J.    **Other and Further Relief**.  Grant such **other and further relief** as the Court deems **just and proper**.

Respectfully submitted, In San Juan, Puerto Rico, this the 5th day of February 2026.

/s/ Jennie Mariel Espada
JENNIE MARIEL ESPADA, ESQ.
USDC No. 225003
P.O. Box 13811
San Juan, PR 00908
Tel: (787) 758-1999 / (787) 633-7199
Email: Espada.esquire@gmail.com
Counsel for Claimant/Petitioner